**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**NATHANIEL HERMAN,**

                       **Plaintiff,**

       **-against-**

**CITY OF NEW YORK and LIEUTENANT
ALI MIRANDA,** *New York City Police
Department Lieutenant*,

                    **Defendants.**

**21-cv-6295 (ALC)**

**OPINION AND ORDER**

---

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff Nathaniel Herman brings this action against Defendants City of New York and Lieutenant Ali Miranda for (1) hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) hostile work environment under the New York State Human Rights Law ("NYSHRL"); (3) hostile work environment under the New York City Human Rights Law ("NYCHRL"); (4) religious discrimination under Title VII; (5) religious discrimination under the NYSHRL; (6) religious discrimination under the NYCHRL; (7) retaliation under Title VII; (8) retaliation under the NYSHRL; and (9) retaliation under the NYCHRL.  Defendants move to dismiss the Amended Complaint ("AC") pursuant to Rule 12(b)(5) and (6) of the Federal Rules of Civil Procedure. For the reasons that follow, Defendants' motion is **GRANTED IN PART** and **DENIED IN SUBSTANTIAL PART**.

## FACTUAL BACKGROUND

      When determining whether to dismiss a case, the court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). The following facts alleged in the AC (ECF No. 21) and are thus assumed to be true for the purposes of this motion.

Plaintiff is a Jewish man employed by the New York Police Department ("NYPD"). (AC ¶¶ 7, 10.) He has worked for the NYPD since 2005, alleging that "he has consistently received favorable evaluations and has always performed his duties and responsibilities at a high level." (AC ¶ 15.) He has been promoted twice during his tenure with the NYPD and has been a "Sergeant" since 2014. (*Id.*)

In June 2016, Plaintiff was transferred to "PSA5, where he performed all duties at a high level." (AC ¶ 16.) However, in November 2018, his unit was assigned a new Lieutenant—Defendant Miranda—who Plaintiff alleges began a campaign of harassment and discrimination against him based on Plaintiff's Jewish religion. (AC ¶¶ 17–18.) This harassment included an incident where Miranda forced Plaintiff to change his locker location from a more desirable location to a less desirable location. (AC ¶ 19.) During this incident, Miranda allegedly loudly told Plaintiff "it is hard to get a Jew to give up good real estate." (AC ¶ 20.) This was said loudly enough for Plaintiff's colleagues to overhear, which Plaintiff alleges was done in order to further damage Plaintiff's reputation on the basis of his religion. (*Id.*) Plaintiff alleges that he also received a Command Discipline ("CD") for refusing to move his locker. (AC ¶ 27.)

After this incident, Plaintiff says that he "noticed an increase in the amount of harassment and unfair treatment by Defendant Miranda." (AC ¶ 21.) Plaintiff maintains that he was issued CD for minor incidents, while other similarly situated non-Jewish sergeants were not disciplined for the same or substantially similar minor incidents. (AC ¶¶ 22, 24.) Plaintiff maintains that he was given a CD penalty of five lost vacation days "for uncuffing and releasing a 13-year-old girl to a person authorized by her parents, not signing off on paperwork, and preparing a late report." (AC ¶ 23.) By contrast, Sergeant De La Cruz, who is not Jewish, only received a warning and admonishment and did not lose vacation benefits like Plaintiff had, despite receiving multiple CDs

for failing to timely sign off or complete paperwork.  (AC ¶ 25.) Sergeants Michael Capello, Christopher Connolly, Wendy Morel, Jason Quiles, Justyna Szychowska, Nesquela Rosario, and Michael Madera, all of whom are not Jewish, allegedly frequently submitted late reports and were never subjected to any discipline measures at all.  (AC ¶ 26.)  Plaintiff alleges that he "has been informed by numerous current and former NYPD personnel that the above CD's/penalties were entirely inappropriate."  (AC ¶ 28.)

On or about April 2019, Plaintiff alleges that he filed an Equal Employment Opportunity Commission ("EEOC") complaint because the religious discrimination and hostile work environment he was experiencing had become untenable.  (AC ¶ 29.)  Plaintiff alleges that the EEOC performed "little or no investigation", and that it closed its investigation in October 2019, without notifying him.  (AC ¶ 30.)  Within months of him filing his EEOC complaint, Plaintiff alleges that his shifts were changed from midnight to day shifts, even though his rank should have permitted him to choose his own schedule.  (AC ¶ 31.)  This shift change, which Plaintiff believes was done out of retaliation for filing his EEOC complaint, resulted in a reduction of his wages.  (AC ¶ 32.)  Plaintiff also alleges that he was required to work shifts with Defendant Miranda and other lieutenants who had participated in the "campaign of harassment based on Plaintiff's religion, and religious discrimination."  (AC ¶ 33.)  Furthermore, Plaintiff alleges that he started receiving more CDs after he filed his EEOC complaint and that one CD had been "completely fabricated".  (AC ¶ 35.)  As a result of these CDs, Plaintiff alleges that his "chances of promotion and other merit awards have been virtually eliminated, as CD's are strong factors considered in determining whether to grant promotions and other awards."  (AC ¶ 36.)

## PROCEDURAL HISTORY

Plaintiff initiated this action on July 23, 2021 (Compl., ECF No. 1); however, he did not file a request for the issuance of the summons until February 18, 2022 (ECF No. 3.)  Thereafter, Defendant City of New York was served on March 1, 2022 (ECF No. 7), and Defendant Miranda was served on March 8, 2022 (ECF No. 11).  Defendants then filed a motion for extension of time to answer or otherwise respond to the complaint with Plaintiff's consent (ECF No. 13), which the Court granted (ECF No. 14).

On May 6, 2022, Defendants filed a pre-motion conference letter outlining their arguments in favor of dismissal of the Complaint.  (ECF No. 15.)  Plaintiff filed its letter response on May 11, 2022.  (ECF No. 17.)  The Court granted Defendants leave to file their motion to dismiss and set a briefing schedule.  (ECF No. 18.)  Plaintiffs indicated that he sought leave to file an amended complaint, and the Court modified the briefing schedule for the motion to dismiss.  (ECF No. 20.)  Plaintiff filed the Amended Complaint on December 7, 2022.  (ECF No. 21.)  Again, Defendants sought and were granted an extension of time to answer or otherwise respond to the allegations.  (ECF No. 25.)

Defendants filed their motion to dismiss on February 6, 2023.  (ECF Nos. 26, 27.)  Defendants argue that: (1) Plaintiff failed to timely serve Defendants; (2) Plaintiff's Title VII claims are partially time-barred; (3) Plaintiff fails to state a plausible claim of religious discrimination; (4) Plaintiff fails to state a plausible claim of hostile work environment; and (5) Plaintiff fails to state a plausible claim of retaliation.  (*See generally* ECF No. 27.)  After an extension request, Plaintiff filed his memorandum of law in opposition to the motion on April 28, 2023.  (ECF Nos. 28, 29, 31.)  On June 7, 2023, Defendants submitted their reply memorandum of law.  (ECF No. 32.)

## LEGAL STANDARD

On a Rule 12(b)(6) motion, the court must "assume all 'well-pleaded factual allegations'
to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'"  *Selevan v.*
*New York Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,
679 (2009)).  Allegations that are "no more than conclusions[ ] are not entitled to the assumption
of truth," and "'naked assertion[s]' devoid of 'further factual enhancement'" or "the defendant-
unlawfully-harmed-me accusation[s]" are not sufficient to show that a plaintiff is entitled to relief.
*Iqbal*, 556 U.S. at 678–79 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 557 (2007)).
Nor must a court accept as true "legal conclusions" or "a legal conclusion couched as a factual
allegation." *Id.*

## DISCUSSION

### I.   Failure to Timely Serve

Defendants argue that this case should be dismissed because Plaintiff failed to timely serve
the Complaint in accordance with the Federal Rule of Civil Procedure 4(m).  (ECF No. 27 at 2–
3.)

Plaintiff did not serve the Complaint in time.  The Complaint was filed on July 23, 2021.
(Compl., ECF No. 1.)  Under Federal Rule of Civil Procedure 4(m), Plaintiff had a 90-day window
in which to effectuate service, meaning that Plaintiff needed to file an affidavit of service by
October 21, 2021.  However, Plaintiff did not file a request for the issuance of summons until
February 18, 2022 (ECF No. 3), 120 days after the Rule 4(m) deadline.  Plaintiff then served the
Complaint on Defendant City of New York on March 1, 2022 (ECF No. 7) and on Defendant
Miranda on March 8, 2022 (ECF No. 11).  In other words, the Defendants were served 221 days

and 228 days after the Complaint was filed, well outside of the 90-day time period set forth under the Federal Rules.

Under Federal Rule of Civil Procedure 4(m), if a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  However, if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." *Id.*

Plaintiff has not shown good cause for his failure to execute service within the required time frame.  In the opposition brief, Plaintiff's counsel explains that the failure to "strictly comply" with Rule 4(m) "was a result of employee shortages during the COVID epidemic and law office error (i.e., temporary paralegal's omission in calendaring appropriate steps in obtaining summonses from the court clerk)."  (ECF No. 31 at 3.)  However, numerous courts have held that attorney mistake does not constitute "good cause" for failure to effectuate service.  *See Felix v. City of Poughkeepsie*, No. 16-CV-1131 (NSR), 2019 WL 5306981, at *6 (S.D.N.Y. Oct. 18, 2019) ("To the extent that Plaintiff's former attorney neglected to obtain summonses from the Clerk of the Court, such neglect, even though inadvertent, does not constitute good cause for an extension."); *see also George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 433 (S.D.N.Y. 2016) ("a delay in service resulting from the mere inadvertence, neglect, or mistake of a litigant's attorney does not constitute good cause.")

With that being said, even in the absence of good cause, the court may in its discretion extend the time to effectuate service.  *Fantozzi v. City of New York*, 343 F.R.D. 19, 26 (S.D.N.Y. 2022)  "But while 'a district court may grant an extension in the absence of good cause…it is not required to do so.'"  *Id.* (quoting *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. 2007)).

"To obtain a discretionary extension absent a showing of good cause, 'the plaintiff must ordinarily advance some colorable excuse for neglect.'" *Id.* (quoting *Cassano v. Altshuler*, 186 F. Supp. 3d 318, 323 (S.D.N.Y. 2016)).  In evaluating whether to exercise its discretion to extend the relevant time period, "[c]ourts in this Circuit generally consider the following factors in deciding whether to exercise their discretion to extend a plaintiff's time to serve: "(1) whether any applicable statute of limitations would bar the action once re-filed; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant attempted to conceal the defect in service; and (4) whether defendant would be prejudiced by extending plaintiff's time for service." *Felix v. City of Poughkeepsie*, No. 16-CV-1131 (NSR), 2019 WL 5306981, at *6 (S.D.N.Y. Oct. 18, 2019) (citing *DeLuca v. AccessIT Group, Inc.*, 695 F. Supp. 2d 54, 66 (S.D.N.Y. 2010)).

The first factor, whether any applicable statute of limitations would be time-barred by the applicable statute of limitations, weighs in Plaintiff's favor.  Given that there is a 300-day statute of limitations for claims under Title VII, it is likely that at least some of Plaintiff's allegations would be barred if they were to be refiled.  *See George v. Pro. Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 436 (S.D.N.Y. 2016) ("If [plaintiff] refiles his complaint, it is possible that his NHYRL claims would be time-barred. Therefore, considerations of applicable statutes of limitations weigh in [plaintiff's] favor.")

The second factor, whether Defendants had actual notice of the claims in the Complaint, weighs in favor of Defendants.  There has been no showing that Defendants received actual notice of these claims before they were actually served.

The third factor, whether Defendant attempted to conceal the defect in service of the complaint, also weighs in favor of Plaintiff.  Defendants first raised any issue with service on May 6, 2022 in their first pre-motion conference letter for their anticipated motion to dismiss.  (ECF

No. 15.)  Before raising the issue with service, both Defendants sought and were granted extensions of 45 days and 38 days in order to respond to the Complaint based on the representation that Defendants were investigating the allegations in the Complaint.  (ECF Nos. 10, 13.)  Neither letter raised any defect in service, and it is not clear from the record whether Defendants raised this issue directly with Plaintiff.  Notably, Plaintiff consented to both extensions of time without issue.  (*Id.*)  Accordingly, the Court finds that this factor weighs in favor of Plaintiff.

Finally, the fourth factor, whether Defendants are prejudiced by extending the deadline to effectuate service, also weighs in favor of Defendants since courts in this district generally find that "extending the service period beyond the statute of limitations period for the action imposes a corresponding prejudice on defendants.'"  *George*, 221 F. Supp. 3d at 437 (quoting *Cassano, v. Altshuler*, 186 F. Supp. 3d 318, 323 (S.D.N.Y. 2016)).

In balancing these factors, the Court is mindful of the longstanding "preference that litigation disputes be resolved on the merits."  *George*, 221 F. Supp. 3d at 437 (quoting *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995)).  Additionally, even though Plaintiff's counsel should have been well aware of their failure to timely serve Defendants, the Court acknowledges that counsel were never formally warned of their failure and that such failure would be grounds for dismissing the Complaint.  *C.f. Cassano*, 186 F. Supp. 3d at 322 ("The Court might have reached a different conclusion were Plaintiffs not provided ample indicators that it was incumbent upon them to properly serve Defendants.")  Accordingly, the Court will exercise its discretion and excuse Plaintiff's failure to timely serve the Complaint.

## II.    Statute of Limitations

Defendants move to dismiss the alleged discrete acts of discrimination prior to August 8, 2019, namely Plaintiff's locker reassignment and the CDs and loss of promotional opportunities

that occurred prior to that date, because they are barred by the statute of limitations for Title VII claims.  (ECF No. 27 at 3–4.)

It is well established that claims arising under the Title VII are subject to a 300-day statute of limitations.  *See Davidson v. LaGrange Fire Dist.*, 523 F. App'x 838, 839 (2d Cir. 2013) (applying a 300-day statute of limitations to Title VII, ADA and ADEA claims).  However, under the "continuing violation" doctrine, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 156 (2d Cir. 2012) (citation and quotation marks omitted).

Because "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice,'" the entire time period of the alleged hostile environment "may be considered by a court for the purposes of determining liability" if "an act contributing to the claim occurs within the filing period." *Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 205 (E.D.N.Y. 2014) (quoting *Nat'l Railroad Passenger Corp. v. Moran*, 536 U.S. 101, 117, 122 (2002)); *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019). Thus, the continuing violation doctrine applies if "the acts within and without the limitations period are sufficiently similar and frequent to justify a conclusion that both are part of a single discriminatory employment practice chargeable to the employer." *Morris v. Amalgamated Lithographers of America, Local One*, 994 F. Supp. 161, 163 (S.D.N.Y. 1998) (internal quotation marks and citations omitted).

However, "a series of discrete but related acts of discrimination" does not "warrant application of the continuing violations doctrine." *Samuels v. City of New York*, No. 22-CV-1904

(JGK), 2023 WL 5717892, at *5 (S.D.N.Y. Sept. 5, 2023) (quoting *Isbell v. City of New York*, 316 F. Supp. 3d 571, 585 (S.D.N.Y. 2018)). "Discrete acts" include actions "such as termination, failure to promote, denial of transfer, or refusal to hire…[because] each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 79 (2d Cir. 2015) (internal quotations and citations omitted). "Additionally, offensive or racist comments constitute discrete acts." *Kaur v. N.Y. City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 327–28 (S.D.N.Y. 2010) (citing *Anderson v. N.Y.C. Dep't of Fin.*, No. 19-CV-7971, 2020 WL 1922624, at *4 (S.D.N.Y. Apr. 21, 2020) (and citing *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, No. 21-CV-695 (KMK), 2023 WL 2691622, at *12 (S.D.N.Y. Mar. 29, 2023)).

The Court finds that Plaintiff's Title VII claims are partially time barred. Plaintiff filed his EEOC charge on June 3, 2020. (AC ¶ 4.) Thus, his Title VII claims of discrimination are time-barred to the extent they rely on conduct that occurred before August 8, 2019, over 300 days before the EEOC charge was filed. This means that Plaintiff's allegations that his locker was moved to a less desirable location within a few weeks of November 2018 and that he received CDs for minor incidents before August 8, 2019 (*see* AC ¶¶ 17–19, 22–28), are time barred. The Court may "consider these acts only as 'background evidence' in evaluating the merits of [Plaintiff's] discrimination claims." *Davidson v. LaGrange Fire Dist.*, 523 F. App'x 838, 839 (2d Cir. 2013) (citing *Nat'l Railroad Passenger Corp.*, 536 U.S. at 112).

On the other hand, the Court finds that the alleged acts predating August 8, 2019 are not time barred under the continuing violation doctrine as they relate to Plaintiff's hostile work environment claim because "[P]laintiff has alleged a course of mistreatment that includes at least some conduct postdating the…cutoff date." *Samuels*, 2023 WL 5717892, at *5.

Accordingly, the Plaintiff's Title VII hostile work environment claim is not time barred, while his Title VII discrimination claim is time barred as of August 8, 2019.

### III. Religious Discrimination

Defendants argue that Plaintiff has not adequately pleaded a claim of religious discrimination because he has not alleged that he suffered an adverse employment action or that any alleged action was motivated by discriminatory animus.  (ECF No. 27 at 4–8.)

Title VII prohibits an employer from discriminating "against any individual ... because of such individual's ... religion ...."  42 U.S.C. § 2000e-2(a)(1).  The word "religion" is defined to "include[ ] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate ... [a] religious observance or practice without undue hardship on the conduct of the employer's business."  *Id.* § 2000e(j).  "Claims brought pursuant to Title VII are analyzed under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)."  *Bockus v. Maple Pro, Inc.*, 850 F. App'x 48, 50 (2d Cir. 2021) (internal citations omitted).  "In particular, 'absent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff [1] is a member of a protected class, [2] was qualified, [3] suffered an adverse employment action, and [4] has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'"  *Id.* (internal citations omitted).

However, a plaintiff need not make out a *prima facie* case at this initial pleading stage.  To survive a motion to dismiss on a Title VII discrimination claim, Plaintiff must plausibly allege that: "(1) [his] employer discriminated against him (2) because of his race, color, religion, sex, or national origin."  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015).  Additionally, claims arising under Title VII and the NYSHRL may be analyzed together.  *See*

*Algarin v. NYC Health + Hosps. Corp.*, No. 1:22-CV-8340 (JLR), 2023 WL 4157164, at *6 (S.D.N.Y. June 23, 2023) (citing *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019)); *see also Salamon v. Our Lady of Victory Hosp.,* 514 F.3d 217, 226 n.9 (2d Cir. 2008) ("We typically treat Title VII and NYSHRL discrimination claims as analytically identical, applying the same standard of proof to both claims.").

For the reasons that follow, the Court finds that the Amended Complaint adequately alleges claims of religious discrimination under Title VII, the NYSHRL and NYCHRL.

A.  Adverse Employment Action

"Both the Second Circuit and courts within the Second Circuit have made clear that many negative personnel actions taken by employers do not constitute adverse employment actions sufficient to establish a *prima facie* case of employment discrimination when they do not affect the terms and conditions of employment." *Kirkland-Hudson*, 2023 WL 2691622, at *18.  Indeed, even "reprimands and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." *Dawson v. City of N.Y.*, No. 09-CV-5348, 2013 WL 4504620, at *10 (S.D.N.Y. Aug. 19, 2013).

The Court finds that Plaintiff has sufficiently alleged that he suffered an adverse employment action, namely the excessive and unwarranted CDs which resulted in loss of vacation benefits and promotional opportunities, and the change in his shift which resulted in decreased compensation.  While "[i]nformal discipline, criticism, or counseling does not constitute an adverse act if no change in working conditions accompanies it", *Rasko v. N.Y. City Admin. for Children's Servs.*, 734 F. App'x 52, * 4 (2d Cir. May 17, 2018) (summary order), the CDs at issue in this litigation do not appear to have been "informal" and actually resulted in a material change in Plaintiff's working conditions.  Specifically, he alleges that he lost vacation benefits that he was

otherwise entitled to and the high number of CDs he received have limited his promotion prosects. *See Sethi v. Narod*, 12 F. Supp. 3d 505, 529 (E.D.N.Y. 2014) ("If Plaintiff was deprived of five paid days of vacation each year to which he was entitled, then Plaintiff suffered a materially adverse impact in the terms and conditions of employment sufficient to establish an adverse employment action.") (citing *Lockhart v. Hofstra Univ.*, 123 Fed. Appx. 31, 32–33 (2d Cir. 2005)); *see also Velazquez v. City of New York*, No. 16-CV-9606 (ALC), 2017 WL 6948357, at *5 (S.D.N.Y. Dec. 13, 2017) (finding that negative performance evaluation which resulted in the "denial of certain benefits of employment" constituted an adverse employment action); *see also Acosta v. City of New York*, No. 11-CV-856 (KBF), 2012 WL 1506954, at *5 (S.D.N.Y. Apr. 26, 2012) (suggesting that plaintiff's probation status which resulted in loss of benefits constituted adverse employment action for purpose of Title VII). Likewise, Plaintiff's shift change from the night to day shift is sufficient at the pleading stage to allege an adverse employment action because Plaintiff alleges that it amounted to a decrease in his wages. *See Pollock v. Shea*, 568 F. Supp. 3d 500, 509 (S.D.N.Y. 2021); *c.f, Jones-Cruz v. Rivera*, No. 19-CV-6910 (PGG), 2021 WL 965036, at *8 (S.D.N.Y. Mar. 14, 2021) ("Although Plaintiff asserts that the night shift offers higher pay …the Complaint does not allege that Plaintiff lost income as a result of the scheduling change.")

### B. Inference of Discrimination

At the pleading stage, the "[P]laintiff must allege facts from which the Court can infer an intent to discriminate on the basis of [religion]." *Paupaw-Myrie v. Mount Vernon City Sch. Dist.*, No. 21-CV-11237 (CS), 2023 WL 1109702, at *8 (S.D.N.Y. Jan. 30, 2023). "An inference of discrimination can arise from circumstances including…invidious comments about others in the employee's protected group[,] more favorable treatment of employees not in the protected group[,] or the sequence of events leading to" the alleged adverse action. *Littlejohn v. City of N.Y.*, 795

F.3d 297, 312 (2d Cir. 2015).  Indeed, "at the 12(b)(6) stage of a Title VII suit, allegation of facts supporting a minimal plausible inference of discriminatory intent suffices as to this element of the claim[.]"  *Pollock v. Shea*, 568 F. Supp. 3d 500, 509 (S.D.N.Y. 2021) (quoting *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016)).

Plaintiff has pleaded sufficient facts to support a minimal plausible inference of discriminatory intent.  Plaintiff alleges that Defendant Miranda made an overtly anti-Semitic remark about Plaintiff in the weeks following November 2018.  Specifically, in earshot of Plaintiff's and his colleagues, Miranda exclaimed "it is hard to get a Jew to give up good real estate."  (AC ¶ 20.)  Such an overt and unambiguous statement of prejudice and religious bias clearly gives rise to an inference of discrimination on the part of Defendants.  *Myers v. Doherty*, No. 21-3012-CV, 2022 WL 4477050, at *2 (2d Cir. Sept. 27, 2022) ("An inference of discriminatory intent may arise from an employer's invidious comments about others in the employee's protected group."); *see also Shub v. Westchester Cmty. Coll.*, 556 F. Supp. 2d 227, 243 (S.D.N.Y. 2008) (finding that remarks made outside of the statute of limitations period can be used to establish a defendant's motive and intent.)

Moreover, specifically as to Plaintiff's NYSHRL and NYCHRL claims which are not time barred, Plaintiff has adequately alleged an inference of discrimination through disparate treatment.  Specifically, Plaintiff alleges that he was given CDs for minor incidents while other similarly situated non-Jewish Sergeants were not issued CDs, did not lose any vacation days, and only received informal "admonishments".  (AC ¶¶ 22–26.)  "A showing of disparate treatment—that is, a showing that an employer treated [the] plaintiff less favorably than a similarly situated employee outside his protected group—is a recognized method of raising an inference of discrimination for the purpose of making out a prima facie case.'"  *Kirkland-Hudson*, 2023 WL 2691622, at *18

(quoting *Ruiz v. Cnty. Of Rockland*, 609 F.3d 486, 493(2d Cir. 2010)).  Although Defendants argue that these comparators are not actually similarly situated to Plaintiff, the Court rejects this argument. "The plaintiff's and comparator's circumstances must bear a "reasonably close resemblance," but need not be 'identical.'" *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir.2000)).  Plaintiff's allegations that other non-Jewish colleagues were similarly situated to him and received less discipline than he did for similar actions is sufficient at this stage of the pleadings to "support[] a minimal plausible inference of discriminatory intent suffices as to this element of the claim[.]"  *Pollock*, 568 F. Supp. 3d at 509.

Accordingly, the Court finds that Plaintiff has adequately stated a religious discrimination claim under Title VII and the NYSHRL. Because the NYCHRL is more expansive than the NYHSRL, the Court also finds that Plaintiff has adequately stated a claim of religious discrimination under the NYCHRL. *See Weekes v. JetBlue Airways Corp.*, No. 21-CV-1965 (MKB), 2022 WL 4291371, at *8 (E.D.N.Y. Sept. 16, 2022) (citing *Jones v. New York City Transit Auth.*, 838 F. App'x 642, 644 n.1 (2d Cir. 2021)).

## IV.   Hostile Work Environment

Defendants also ask the Court to dismiss Plaintiff's claims for hostile work environment because the allegations are too conclusory and because Defendant Miranda's single anti-Semitic remark does not raise to the level of pervasiveness sufficient for a hostile work environment claim as a matter of law.  (ECF No. 27 at 8–9.)

"To state a claim that a plaintiff was subjected to a hostile work environment, a complaint must plausibly allege a workplace setting 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of [plaintiff's] employment

and create an abusive working environment.'" *Brodt v. City of New York*, 4 F. Supp. 3d 562, 570 (S.D.N.Y. 2014) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  "Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Id.* (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004)).   However, "[i]n evaluating whether the circumstances suffice to find a hostile work environment, the [Second Circuit] has 'repeatedly cautioned against setting the bar too high.'" *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 990 (S.D.N.Y. 2017) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).  "To survive a motion to dismiss, a plaintiff must allege facts showing 'she was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 335 (S.D.N.Y. 2020) (quoting *Patane*, 508 F.3d at 113).

Here, Plaintiff alleges that his hostile work environment claim is premised on being transferred to a less desirable locker, being subjected to an anti-Semitic remark by Defendant Miranda, receiving unwarranted CDs, and being transferred from the night shift to the day shift resulting in less pay and being forced to work with Defendant Miranda and other lieutenants who were harassing him.  (ECF No. 31 at 18.)  Plaintiff alleges that these incidents were because of his religion.  (*Id.*)

The Court finds that Plaintiff has alleged sufficient facts to support his hostile work environment claim at this stage in the pleadings.  As an initial matter, contrary to Defendants' arguments, "a hostile work environment can…be established through evidence of a single incident of harassment that is extraordinarily severe." *Miller v. N.Y. State Police*, No. 20-3976, 2022 WL 1133010, at *2 (2d Cir. Apr. 18, 2022) (citing *Fincher v. Depository Tr. & Clearing Corp.*, 604

F.3d 712, 724 (2d Cir. 2010)).  Although Defendants attempt to frame Defendant Miranda's anti-Semitic statement as a "stray remark", the content of the remark, the fact that it was made within earshot of Plaintiff and other colleagues, and the ensuing alleged unwarranted CDs and shift changes are sufficient at the pleading stage to sustain a claim of a hostile work environment based on Plaintiff's religion.  *See  LeGrand v. Walmart Stores E., LP*, 779 F. App'x 779, 783 (2d Cir. 2019) (sustaining hostile work environment claim because "reasonable people would find an environment to be hostile if supervisors make racist comments about them behind their backs.") (summary order).  Accordingly, drawing all inferences in favor of Plaintiff, the Court finds that Plaintiff has adequately alleged his hostile work environment claim at this stage of the case.  *See Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 990 (S.D.N.Y. 2017); *see also Patane v. Clark*, 508 F.3d 106, 114 (2d Cir. 2007) ("[W]e conclude that Plaintiff has alleged sufficient facts to be entitled to offer evidence to support her claim.") (internal alterations and citations omitted).

Additionally, the Court finds that Plaintiff has adequately stated a hostile work environment claim under the NYCHR.  *Small v. New York City Dep't of Educ.*, No. 1:21-CV-1527-GHW, 2023 WL 112546, at *8 (S.D.N.Y. Jan. 5, 2023) ("[A] hostile work environment claim under the NYCHRL only need plausibly allege unequal treatment based on a protected characteristic.") (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 114 (2d Cir. 2013)).

## V.   Retaliation

Finally, Defendants argue that Plaintiff has not adequately alleged his retaliation claim because he has not alleged a causal connection between the alleged schedule change and his EEOC complaint.  (ECF No. 27 at 9–11.)

Under Title VII, an employer may not "discriminate against any of his employees… because he has opposed any practice made an unlawful employment practice by this subchapter ...." 42 U.S.C. § 2000e–3(a).  "A plaintiff makes out a *prima facie* case of retaliation in a Title VII case by coming forward with evidence of 1) participation in a protected activity; 2) the defendant's knowledge of the protected activity; 3) an adverse employment action; and 4) a causal connection between the protected activity and the adverse employment action." *Brodt*, 4 F. Supp. 3d at 571 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 844 (2d Cir.2013) (internal quotations omitted)).  "A causal connection between an alleged adverse action and protected activity may be demonstrated by temporal proximity." *Zabar*, 2020 WL 2423450, at *6 (citing *Nagle v. Marron*, 663 F.3d 100, 110 (2d Cir. 2011) ("A plaintiff can establish a causal connection to support a retaliation claim by showing that the protected activity was closely followed in time by the adverse employment action.")).  For a retaliation claim to survive a motion to dismiss, "the plaintiff must plausibly allege that: (1) [her employer] discriminated—or took an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful employment practice."  *Salas*, 298 F. Supp. 3d at 685 (quoting *Vega*, 801 F.3d at 90).

For the reasons that follow, the Court finds that Plaintiff has adequately pleaded his retaliation claims.

A.  <u>Adverse Employment Action</u>

The Court finds Plaintiff has adequately pleaded an adverse employment action in relation to his claim for retaliation.

Plaintiff engaged in protected activity when he filed his discrimination complaint with the EEOC (AC ¶ 29), and that he suffered an adverse employment action in the form of yet more unwarranted CDs and a change to the day shift from the night shift which reduced his

compensation (AC ¶¶ 31–32, 35–36).  Plaintiff also alleges that his shifts required him to work more closely with Defendant Miranda, the very person who made the overtly anti-Semitic remark about Plaintiff and who, according to the Amended Complaint, initiated the harassment against Plaintiff based on his religion which prompted Plaintiff to file the EEOC complaint.  (AC ¶ 33.) The standard for an adverse action in the retaliation context, unlike the discrimination context, "is not limited to discriminatory actions that affect the terms and conditions of employment." *Benzinger v. Lukoil Pan Americas, LLC*, 447 F. Supp. 3d 99, 124 (S.D.N.Y. 2020) (*Vega*, 801 F.3d at 90).  An "adverse employment action" in the context of a retaliation claim is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Vega*, 801 F.3d at 90.  Because these actions could all dissuade a reasonable worker from making a complaint, the Court finds that Plaintiff has plausibly plead that he suffered an adverse employment action for his retaliation claim.

> A.  <u>Causation</u>

Likewise Plaintiff has pleaded sufficient facts to indirectly establish causation between his protected activity and these adverse employment actions.  Causation can be pleaded by "either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant."  *Lees v. Graduate Ctr., City Univ. of New York*, 696 F. App'x 530, 531 (2d Cir. 2017).  Because there is no direct evidence of retaliatory animus, the causal connection here must be alleged "by showing that the protected activity was followed closely by the discriminatory treatment."  *Hicks v. Baines*, 593 F.3d 159, 170 (2d Cir. 2010) (internal quotation marks and citations omitted).

Plaintiff filed his EEOC complaint in April 2019 and the investigation was closed in October 2019.  (AC ¶¶ 30–31.)  Plaintiff then alleges that within months of filing the complaint, his shifts were changed and that he noticed an increase in the number of unwarranted CDs he was being issued.  Although there is no "bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," *Littlejohn*, 795 F.3d at 31, "[t]emporal proximity alone is generally insufficient after about three months…" *Berrie v. Bd. Of Educ. Of the Port Chester-Rye Union Free Sch. Dist.*, 750 F. App'x 41, 49 (2d Cir. 2018).  Defendants argue that the lack of specificity in the Amended Complaint as to the amount of time that elapsed between Plaintiff's EEOC complaint and his subsequent adverse employment actions requires dismissal of Plaintiff's retaliation claim as a matter of law.  However, a plaintiff need not allege with particularity the exact dates on which an adverse employment action was made in order to plausibly allege a retaliation claim.  *See Syeed v. Bloomberg L.P.*, No. 1:20-CV-7464-GHW, 2022 WL 3447987, at *10 (S.D.N.Y. Aug. 17, 2022) ("[T]the Court cannot conclude, as a matter of law, that the amount of time between [plaintiff's] complaints those actions falls outside of the range in which a causal connection can be inferred.")  Because there is "some degree of specificity as to the dates of the specific action" *Ndugga v. Bloomberg L.P.*, No. 1:20-CV-7464-GHW, 2023 WL 4744183 (S.D.N.Y. July 25, 2023), the Court finds that Plaintiff has plausibly alleged a causal connection for his retaliation claim.

Accordingly, the Court finds that Plaintiff has plausibly alleged a claim of retaliation under Title II, the NYSHRL and the NYCHRL.  *Farmer*, 473 F. Supp. 3d at 334 ("The Court's holding sustaining the AC's retaliation claims under Title VII and the NYSHRL dictates the same result

under the NYCHRL, whose retaliation standard is similar to—but in part more permissive than—its federal and state analogues.")

## CONCLUSION

For the reasons set out above, Defendants' motion to dismiss is **GRANTED** as to Plaintiff's Title VII discrimination claims for acts occurring prior to August 8, 2019.  The rest of Defendants' motion is **DENIED** as to Plaintiff's Title VII discrimination claim for acts occurring after August 8, 2019, his NYSHRL and NYCHRL discrimination claims, his hostile work environment claims, and his retaliation claims.  The parties shall submit a joint status letter no later than **fourteen days** from the date of this decision.

The Clerk of Court is respectfully directed to close the pending motion at ECF No. 26.

**SO ORDERED.**

**Dated: September 29, 2023**
          **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**