USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: 3/31/26 _____

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NATHANIEL HERMAN,

                    **Plaintiff,**

          -against-

CITY OF NEW YORK ET AL,

                    **Defendants.**

---

1:21-cv-06295 (ALC) (RFT)

**OPINION & ORDER**

**ANDREW L. CARTER, JR., United States District Judge:**

Plaintiff Nathaniel Herman brings this action against Defendants City of New York and Lieutenant Ali Miranda for (1) hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) hostile work environment under the New York State Human Rights Law ("NYSHRL"); (3) hostile work environment under the New York City Human Rights Law ("NYCHRL"); (4) religious discrimination under Title VII; (5) religious discrimination under the NYSHRL; (6) religious discrimination under the NYCHRL; (7) retaliation under Title VII; (8) retaliation under the NYSHRL; and (9) retaliation under the NYCHRL. Before the Court is Defendants' motion for summary judgement pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Defendants' motion is **DENIED in part and GRANTED in part.**

## BACKGROUND

I.     **Factual History**[1]

---

[1] This factual history is drawn from Defendants' Statement of Undisputed Material Facts submitted pursuant to Local Civil Rule 56.1, *see* ECF No. 71, Plaintiff's counterstatement, *see* ECF No. 81, Plaintiff's response to Defendants statement, *see* ECF No. 83, Defendants' response to Plaintiff's counterstatement, Defendants' objections noted in their motion to strike, *see* ECF Nos. 91-92, the summary judgment briefing, and the exhibits attached thereto. The Court largely cites to Plaintiff's response to Defendants' Rule 56.1 Statement where a fact is not in dispute.

The Court has previously detailed the factual and procedural history of this case. *See Herman v. City of New York*, No. 21-CV-6295 (ALC), 2023 WL 6386887, at *1-2 (S.D.N.Y. Sept. 29, 2023). The Court assumes the parties' familiarity with the facts and procedural history of the case and will only outline the background as relevant to the Court's analysis herein.

Plaintiff Nathaniel Herman ("Plaintiff") is a Jewish man who was appointed as a police officer by New York City Police Department ("NYPD") on January 10, 2005. *See* ECF No. 83 ¶¶ 102. Plaintiff was promoted to the rank of Detective Specialist in August 2013 and then sergeant in April 2014. *See id*. ¶¶ 3-4. Plaintiff joined PSA 5—a "police service area" that "covers only housing" on June 6, 2016 as a patrol supervisor. *See id*. ¶¶ 5-6. At PSA 5, Plaintiff worked the midnight tour from June 2016 until Spring 2017. *See id*. ¶ 7. In Spring 2017, Plaintiff was re-assigned to PSA 5's Anti-Crime unit where he worked the 6:00 p.m. to 2:00 a.m. tour. *See id*. ¶ 8. Plaintiff testified that he was the only one qualified for the position. *See id*.

On December 14, 2017, an NYPD internal investigation found that Plaintiff failed to prepare NYPD forms, review or sign a department invoice for accuracy and completeness, and failed to prepare proper memo book entries. *See id*. ¶ 9. A command discipline was thereafter prepared by Deputy Inspector Gardner and issued on January 31, 2019, substantiating the incident. *See id*. ¶¶ 10-11. The proposed penalty was to warn and admonish Plaintiff, and he did not lose any vacation days. *See id*. ¶¶ 12, 14. Plaintiff signed the command discipline form. *See id*. ¶ 13.

Plaintiff has been recommended for departmental recognition in connection with his job performance on multiple occasions in late 2018 to late 2019. *See id*. ¶¶ 16-19, 52, 61. In September 2019, Lt. Miranda was assigned to PSA 5 as a patrol lieutenant and served as the platoon commander for PSA 5's third platoon. *See id*. ¶ 20. In January 2019, Lt. Miranda was assigned to be PSA 5's "Administrative Lieutenant" and "Operation Coordinator." *See id*. ¶ 21. In this role,

Lt. Miranda "oversaw locker distribution, processed leave requests, made administrative adjustments as directed by the commanding officer, notified PSA 5 staff of any administrative changes, and generally assisted the PSA 5 Commanding Officer." *See id.* ¶ 22. Lt. Miranda was not Plaintiff's direct supervisor. *See id.* ¶¶ 23. In January 2019, Lt. Miranda was informed that other precincts have separate locker area for lieutenants and sergeants. *See id.* ¶ 26. Thereafter, Lt. Miranda requested three sergeants- Plaintiff, Sgt. Richie Gonzalez, and Sgt. Jimenez—whose lockers were in the lieutenants' locker area to move their lockers to the sergeants' locker area. *See id.* ¶ 27. While Sgt. Jimenez and Sgt. Gonzalez agreed to move their lockers, Plaintiff declined to do so, and his locker remained the same throughout his time at PSA 5. *See id.* ¶¶ 29-30.

On February 28, 2019, Plaintiff was directed by Lt. Michael Urena, his supervisor, to conduct a department vehicle accident investigation. Lt. Urena considered Plaintiff to have failed to complete this investigation and a command discipline was prepared by Lt. Urena and issued on March 15, 2019. *See id.* ¶¶ 31, 33. The command discipline was substantiated, and the proposed penalty was a warning and verbal admonishment. *See id.* ¶¶ 34-35. Plaintiff signed the command discipline form and testified that the only consequence received for this command discipline was "a warn and admonish." *See id.* ¶¶ 36-37. Plaintiff testified this command discipline was punishment for refusing to move his locker. *See id.* ¶ 38. In March 2019, at his own request, Plaintiff left the Anti-Crime unit and returned to the midnight tour where he continued his role as a patrol supervisor, supervised police officers, and acted as a desk officer. *See id.* ¶¶ 39-40. Plaintiff testified that the move from the Anti-Crime unit to the midnight tour was punitive and in response to his refusal to give up his locker. *See id.* ¶ 41. Plaintiff testified that the switch to the midnight tour was a hardship and burden on his life. *See id.* ¶ 42.

On April 4, 2019, Plaintiff filed an internal complaint with NYPD's Equal Employment Opportunity Division ("EEOD"), alleging that Lt. Miranda discriminated against Plaintiff on the basis of religion. *See id*. ¶ 43. Specifically, Plaintiff alleged that Lt. Miranda asked Plaintiff to move his locker and said "I know it's hard for Jewish people to give up prime real estate, but I need your locker." *See id*. While Plaintiff identified Sgt Gonzalez as a witness to the alleged comment, Sgt. Gonzalez denied hearing such comment during his EEOD interview. *See id*. ¶¶ 44-45. Lt. Miranda also denied making the alleged statement when EEOD interviewed him. *See id*. ¶ 47. The EEOD determined there was no evidence of employment discrimination and closed the complaint. *See id*. ¶ 49. Lt. Miranda was formally reinstructed on NYPD's EEO policies and courtesy, professionalism, and respect. *See id*. ¶ 50. Plaintiff was notified of the EEOD's determination on October 18, 2019. *See id*. ¶ 51.

On May 10, 2019, Plaintiff's subordinates detained a juvenile and were involved in a use of force incident. *See id*. ¶ 53. The Risk Management Bureau thereafter conducted an audit and randomly selected video footage of such incident for inspection. *See id*. ¶ 54. Upon review of the footage, internal records note that Plaintiff failed to instruct his subordinates to prepare NYPD forms associated with the use of force and detainment of a juvenile. *See id*. ¶ 55. On August 5, 2019, a schedule B command discipline for this incident was prepared by Captain Parul Ahmed and later substantiated. *See id*. ¶¶ 56-57. Plaintiff signed the command discipline form and accepted the proposed penalty of loss of five vacation days. *See id*. ¶¶ 58-60.

In August 2019, Plaintiff moved from the midnight tour to the day tour and later testified that such tour change was due to his two command disciplines. *See id*. ¶¶ 62-63. Plaintiff testified that his job responsibilities during the day tour remained the same, and he continued to serve as a patrol supervisor. *See id*. ¶ 64. On October 25, 2019, Plaintiff submitted two requests to take a

leave of absence in the form of lost time on November 1, 2019 and November 2, 2019, as a chart day. *See id*. ¶ 65. Plaintiff's requests were denied, with the cited reason being a shortage of personnel scheduled to work. *See id*. ¶ 66. Nonetheless, Plaintiff took a leave of absence on November 1, 2019 and also took a chart day on November 4. *See id*. ¶¶ 68, 70. Lt. Miranda, in consultation with roll call personnel, made the decision to deny Plaintiff's leave requests. *See id*. ¶ 67. Captain Yakatally, the Commanding Officer of PSA 5, instructed that a Supervisor's Complaint Report for the aforementioned unauthorized absences be issued. Nonetheless, Plaintiff took a leave of absence on November 1, 2019 and also took a chart day on November 4. *See id*. ¶ 71. Plaintiff testified that this command discipline was not substantiated, never adjudicated, never issued, and ultimately withdrawn. *See id*. ¶¶ 72-74. Plaintiff testified he was never disciplined in connection with this command discipline. *See id*. ¶¶ 75.

On June 13, 2019, the Traffic Enforcement District posted a staffing vacancy. *See id*. ¶ 76. Plaintiff applied and interviewed for the position on September 13, 2019. *See id*. ¶ 77. On October 31, 2019, Captain Yakatally, the Commanding Officer of PSA 5, recommended Plaintiff for the transfer. *See id*. ¶ 78. Captain Yakatally noted that "Sergeant Herman has demonstrated his commitment to the mission of the [NYPD] by taking his assignments and role as a Sergeant seriously. Moreover, Sergeant Herman is a punctual and reliable member of the service who will perform well as a member of the Traffic Enforcement District." *See id*. On November 22, 2019, Inspector Richard Avignone, the Commanding Officer of the Traffic Enforcement District, requested that Plaintiff be transferred to the Traffic enforcement District to fill a staffing vacancy. *See id*. ¶ 79. On February 28, 2020, the Police Commissioner approved Plaintiff's transfer. *See id*. ¶ 80. Plaintiff thereafter transferred to the Traffic Enforcement District effective March 4, 2020. *See id*. ¶ 81. On June 11, 224, Inspector Brian O'Sullivan requested Plaintiff be transferred from

the Traffic Enforcement District to the Citywide Traffic Task Force. *See id*. ¶ 82. Plaintiff transferred here effective July 24, 2024. On December 3, 2024, Plaintiff appeared at the Police Pension Fund to request a service retirement. *See id*. ¶ 84. Plaintiff retired effective January 30, 2025. *See id*. ¶ 85.

On June 3, 2020, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission. *See id*. ¶ 94. In the EEOC complaint, Plaintiff alleges he was subjected to discrimination, hostile work environment, and retaliation on the basis of religion. *See id*. ¶ 95. Lt. Miranda testified that he was unaware that Plaintiff filed a discrimination complaint with an external agency. *See id*. ¶ 97-98.

## II.    Procedural History

Plaintiff filed a complaint initiating this action on July 23, 2021. *See* ECF No. 1. Plaintiff filed an amended complaint on December 7, 2022. *See* ECF No. 21. Defendants thereafter moved to dismiss. *See* ECF No. 26. On September 29, 2023, this Court issued an Opinion granting in part and denying in significant part Defendants' motion to dismiss the amended complaint. *See* ECF No. 33; *see also See Herman v. City of New York*, No. 21-CV-6295 (ALC), 2023 WL 6386887, at *10. The Court granted Defendants' motion to dismiss specifically as to Plaintiff's Title VII discrimination claims for acts occurring prior to August 8, 2019, finding such claims to be time barred. *See id*. On December 26, 2023, Defendants filed an answer to Plaintiff's amended complaint. *See* ECF No. 36. On March 24, 2025, Defendants filed a letter motion for a pre-motion conference regarding their anticipated motion for summary judgement. *See* ECF No. 65. Plaintiff filed his response on April 7, 2025. *See* ECF No. 67. On April 8, 2025, the Court denied Defendants' request for a pre-motion conference and granted leave to file a motion for summary judgement. *See* ECF No. 68.

On June 4, 2025, Defendants filed their motion for summary judgment, along with accompanying memorandum of law, Rule 56.1 Statement, declarations, and exhibits. *See* ECF Nos. 69-72. On September 17, 2025, Plaintiff filed his memorandum of law in opposition to Defendants' motion for summary judgement, along with his accompanying counterstatement and response to Plaintiff's Rule 56.1 statement, declarations, and exhibits. *See* ECF Nos. 80-83. On October 20, 2025, Defendants filed their counterstatement to Plaintiff's Rule 56.1 statement, reply memorandum of law in support of their motion for summary judgement, and accompanying declarations and exhibits. *See* ECF Nos. 88-90. On October 20, 2025, Defendants file a motion to strike along with an accompanying memorandum of law in support. *See* ECF Nos. 91-92. Plaintiff filed his opposition on November 4, 2025, and Defendants filed their reply on November 10, 2025. *See* ECF Nos. 94-95. The Court considers both the motion for summary judgement and the motion to strike fully briefed.

## LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." *Cortes v. MTA New York City Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson*, 477 U.S. at 248. Speculation, conclusory allegations, and mere denials are not enough to raise genuine issues of fact. *See National Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd.*, 696 F. Supp. 897, 900 (S.D.N.Y. 1988). An issue of fact is "genuine" when a reasonable fact finder could render a verdict in the nonmoving party's favor. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." (internal quotation omitted)).

At summary judgment, the moving party has the burden "to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). To avoid summary judgment, a party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. When the moving party has met its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Simsbury-Avon Pres. Soc'y LLC v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim. In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial." *Id.* When a motion for summary judgment is unopposed, a court "may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (quoting *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)) (internal quotation marks omitted).

"If there are cross-motions for summary judgment, the Court must assess each of the motions and determine whether either party is entitled to judgment as a matter of law." *Gen. Ins. Co. of Am. v. Starr Indem. & Liab. Co.*, No. 14-CV-07354 (JGK), 2016 WL 4120635, at *4 (S.D.N.Y. July 22, 2016) (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993)). "[W]hen both sides move for summary judgment, neither side is barred from asserting that there are issues of fact, sufficient to prevent the entry of judgment, as a matter of law, against it.

When faced with cross-motions for summary judgment, a district court is not required to grant judgment as a matter of law for one side or the other." *Heublein, Inc.*, 996 F.2d at 1461 (citation omitted). Instead, the court must "evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (citation omitted).

In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Niagara Mohawk Power Corp. v. Jones Chemical Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). Courts may not assess credibility, nor may they decide between conflicting versions of events because those matters are reserved for the jury. *See Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Id.* (citing *Anderson*, 477 U.S. at 252).

## DISCUSSION

The Court now addresses each of Defendants' arguments as to whether summary judgment should be granted. As an initial matter, Defendants argue Plaintiff's Title VII retaliation and hostile work environment claims are partially time-barred. Further, Defendants argue there are no triable issues of fact as to Plaintiff's discrimination claims, hostile work environment claims, retaliation claims, and individual claims against Lt. Miranda. Before addressing Defendants' motion for summary judgement, the Court must first address Defendants' motion to strike.

### I.      Motion to Strike

Defendants move to strike portions of Plaintiff's 56.1 response and the entirety of Plaintiff's 56.1 statement, arguing that these submissions improperly assert legal conclusions, editorialize, purport to dispute facts without proper citation to the record, and cite to testimony that does not exist." *See* ECF No. 92 at 1.

"Because a decision on the motion to strike may affect [a movant's] ability to prevail on summary judgment, it is appropriate to consider the Motion to Strike prior to the Motion for summary judgment." *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 213 (S.D.N.Y. 2007) (internal quotation marks omitted). Federal Rule 56(c) of Civil Procedure states that affidavits and declarations in support of motions for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." A court may "strike portions of an affidavit that are not based on the affiant's personal knowledge, contain inadmissible hearsay or make generalized or conclusory statements." *Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999), *cert. denied*, 528 U.S. 965 (1999), *rehr'g denied*, 528 U.S. 1107 (2000).

While "[m]otions to strike are generally disfavored," *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 829 (S.D.N.Y. 2008) (internal quotation marks omitted), "[a] motion to strike is particularly disfavored in the Rule 56.1 context," *Pearlstein v. BlackBerry Ltd.*, No. 13CIV7060, 2022 WL 19792, at *7 (S.D.N.Y. Jan. 3, 2022). "Although Rule 56(c)(2) provides that a party moving for summary judgment may object to evidence that 'cannot be presented in a form that would be admissible in evidence,' the 2010 Committee Notes to that subsection make clear that '[t]here is no need to make a separate motion to strike' . . . [b]ecause evidence inadmissible at trial is insufficient to create a genuine dispute of material fact." *Codename Enters., Inc. v. Fremantlemedia N. Am., Inc.*, No. 16CIV1267, 2018 WL 3407709, at *4 (S.D.N.Y. Jan. 12,

2018). "Where a court does not rely on contested submissions in deciding a motion for summary judgment, it may deny a party's motion to strike as 'academic.'" *Kleeberg v. Eber*, No. 16CV9517, 2020 WL 4586904, at \*13 (S.D.N.Y. Aug. 10, 2020) (internal quotation omitted). "Alternatively, it may, without granting a motion to strike, simply 'decline to consider evidence' from the inadmissible declarations." *Sec. & Exch. Comm'n v. Mattessich*, 523 F. Supp. 3d 624, 633 (S.D.N.Y. 2021) (quoting *Fabrication Enters., Inc. v. Hygenic Corp.*, 64 F.3d 53, 59 n.5 (2d Cir. 1995)).

Here, the Court only relies on the facts admitted to by Plaintiff in response to Defendants' Rule 56.1 Statement of Material Fact. As the Court does not rely on the contested submissions in reaching its decision here, Defendants' motion to strike is hereby **DENIED** as academic.

II.    **Whether Plaintiff's Title VII Retaliation and Hostile Work Environment Claims are Partially Time-Barred**

Defendants argue that "Plaintiff's Title VII retaliation and hostile work environment claims that accrued before August 8, 2019 are time-barred as a matter of law and should be dismissed." ECF No. 70 at 2. The Court has previously addressed this issue in its Opinion on Defendants' motion to dismiss. *See Herman v. City of New York*, N0 21-CV-6295 (ALC), 2023 WL 6386887, at \*4-5. As to Plaintiff's Title VII hostile work environment claims, the Court found that "the alleged acts predating August 8, 2019 are not time barred under the continuing violation doctrine as they relate to Plaintiff's hostile work environment claim because '[P]laintiff has alleged a course of mistreatment that includes at least some conduct postdating the . . . cutoff date.'" *See id*. at \*5. Thus, Plaintiff's Title VII hostile work environment claims are not time barred.

Regarding Plaintiff's Title VII retaliation claims, Defendants argue such claims are time barred because any alleged adverse employment decisions occurred before Plaintiff filed his

EEOC charge on June 3, 2020. *See* ECF 70 at 1. The Court previously found that Plaintiff's Title VII claims were partially time-barred "to the extent they rely on conduct that occurred before August 8, 2019, over 300 days before the EEOC charge was filed." *See Herman v. City of New York*, N0 21-CV-6295 (ALC), 2023 WL 6386887, at *5. Specifically, "Plaintiff's allegations that his locker was moved to a less desirable location within a few weeks of November 2019 and that he received CDs for minor incidents before August 8, 2019" are time-barred. *See id*. Thus, any Title VII retaliation claims that rely on these specific allegations would be time-barred. This does not mean that any retaliation claim premised on Plaintiff's April 2019 internal complaint to the NYPD's EEOD is necessarily time barred as this would depend on whether the specific retaliatory acts took place before or after August 8, 2019.[2] Further, any retaliation claims based on alleged adverse employment decisions occurring after Plaintiff's filing of an EEOC charge on June 3, 2020 would not be time barred.

### III.    Whether There Are Triable Issues of Material Fact as to Plaintiff's Discrimination or Disparate Treatment Claims

Discrimination and disparate treatment claims are analyzed using the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case of discrimination under Title VII or SHRL, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the employment; (3) he was subjected to an adverse employment decision or action; and (4) the adverse action occurred under circumstances that give rise to an inference of discrimination. *Ruiz v. County of Rockland*, 609 F.3d 486, 491-92 (2d Cir.

---

[2] The Court acknowledges Defendants' objection regarding any retaliation claim premised on Plaintiff's April 2, 2019 internal complaint made to NYPD's EEOD. *See* ECF No. 89 at 8. Defendants argue that such claim was not raised in the Amended Complaint and thus cannot be raised at this stage in the litigation. *See id*. The Court finds Plaintiff did sufficiently allege this fact in his Amended Complaint. *See* ECF No. 21 ¶ 29. Although Plaintiff refers to the EEOC, given the April 2019 date and the closing of the investigation in October 2019, the Court construes this as a typographical mistake on the part of Plaintiff as he likely meant EEOD rather than EEOC.

2010). "Under the CHRL, Plaintiff need not show that the employment action was materially adverse; rather, 'a plaintiff must simply show that she was treated differently from others in a way that was more than trivial, insubstantial, or petty.'" *Santiago v. City of New York*, No. 20-CV-6098 (ALC) (SLC), 2024 WL 4354878, at \*9 (S.D.N.Y. Sept. 28, 2024) (quoting *Sotomayor v. City of New York*, 862 F.Supp.2d 226, 258 (E.D.N.Y. 2012)). "However, even under the CHRL, there must be a causal connection between Plaintiff's protected characteristic and the adverse employment action." *See id*. (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109, 113 (2d Cir. 2013)).

If the plaintiff first establishes a *prima facie* case of discrimination, "the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for the termination." *Jemmott v. New York City Health & Hosps. Corp.*, No. 19-CV-989 (RPK)(ST), 2022 WL 4468129, at \*4 (E.D.N.Y. Sept. 26, 2022) (Internal quotation and citation omitted). "If the defendant succeeds, the burden shifts back to the plaintiff." *See id*. "The burden of persuasion remains on the plaintiff throughout." *See id*. (internal citation omitted).

For the reasons discussed below, Plaintiff's discrimination claims do not survive summary judgment and must be dismissed.

### a. Plaintiff fails to establish a *prima facie* case

Plaintiff has failed to establish a *prima facie* case of religious discrimination because no reasonable jury could find that Plaintiff's adverse employment actions occurred under circumstances giving rise to an inference of discriminatory intent.

Plaintiff argues that he has raised sufficient evidence for a reasonable jury to conclude that Defendant failed to accommodate Plaintiff's religious observance in violation of federal and city law. *See* ECF No. 80 at 5. However, the religious discrimination claims raised in the Amended

Complaint do not refer either to a failure to provide religious accommodation or a failure to promote. *See generally* ECF No. 21. Further, the Amended Complaint also does not contain any reference to the conduct or facts now relied on by Plaintiff to support his religious accommodation claim. *See id*. Specifically, Plaintiff failed to raise any allegations in his Amended Complaint pertaining to "repeated requests beginning in 2019 to be excused from working Friday evening and Saturday tours so that he could observe the Sabbath" which he now alleges to support this failure to accommodate claim. *See id*.; *see also* ECF No. 80 at 2-3. Similarly, Plaintiff raises for the first time in his opposition allegations that he was denied "shift flexibility, access to trainings, and assignment preferences" in order to support a new failure to promote claim. As such, the Court declines to consider the failure to accommodate and failure to promote claims raised for the first time at summary judgement. *See Santiago v. City of New York*, 2024 WL 4358788, at *9 ("Plaintiff cannot plead a new cause of action in his opposition."); *see also Sec. & Exch. Comm'n v. Yorkville Advisors, LLC*, 305 F. Supp. 3d 486, 531 S.D.N.Y. 2018) (ruling that plaintiff "cannot now amend [its] complaint by merely raising new facts or theories in [its] briefs").

Further, Defendants correctly point out that in Plaintiff's Amended Complaint, his religious discrimination claims appear to be primarily predicated on an alleged comment made by Lt. Miranda. *See* ECF No. 89 at 2. However, Plaintiff's opposition contains no mention of Lt. Miranda or the alleged comment. *See generally* ECF No. 80. As such, the Court could find Plaintiff to have abandoned his claims against Lt. Miranda and any claims based on the comment about real estate allegedly made by Lt. Miranda.[3] *See Xifei Xu v. City of New York*, No. 18-CV-1222 (RA), 2020 WL 2088301, at *4 (S.D.N.Y. Apr. 30, 2020) ("Federal Courts may deem a claim abandoned when a party moves for summary judgement on one ground and the party opposing summary judgement

14

fails to address the argument in any way."). In any event, Plaintiff fails to put forth sufficient evidence to make out a *prima facie* case of religious discrimination based on this theory.

Plaintiff alternatively puts forth the theory that Defendants discriminated against him in based on his religion because he was disciplined more harshly than other similarly situated, non-Jewish Sergeant. "When considering whether a plaintiff has raised an inference of discrimination by showing that he was subjected to disparate treatment, a plaintiff must show he was similarly situated in all material respects to the individuals with whom he seeks to compare himself." *Santiago v. City of New York*, 2024 WL 4354878, at \*12 (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). Plaintiff has fallen short of doing so. When comparing conduct, the standard requires a "reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's situations where the plaintiff and the comparator were subject to the same discipline standards and engaged in comparable conduct." *Id*. This Court previously acknowledged that Plaintiff sufficiently alleged disparate treatment at the motion to dismiss stage based on his allegations that "he was given CDs for minor incidents while other similarly situated non-Jewish Sergeants were not issued CDs, did not lose any vacation days, and only received informal 'admonishments.'" *See* ECF No. 33 at 14. However, the record fails to now support these allegations. In his amended complaint, Plaintiff identified the following comparators: Sergeants De La Cruz, Michael Capello, Christopher Connolly, Wendy Morel, Jason Quiles, Justyna Szychowska, Nesquela Rosario, and Michael Madera. *See* ECF No. 21 ¶¶ 24-26. The record establishes that Plaintiff testified he was unaware of any of these comparators' religious affiliation or whether any of them engaged in conduct similar to what Plaintiff was accused of engaging in. *See* ECF No. 83 ¶¶ 86-93. Further, other than Sergeant De La Cruz, none of the other individuals worked at PSA 5. *See id*. Plaintiff also testified he does not know a Sergeant Jason Quiles. *See id.*

15

¶ 90. As such, Plaintiff fails to establish that the purported comparators are sufficiently similar to Plaintiff in all material aspects.

### b. Even if Plaintiff could establish a *prima facie* case, he cannot establish that Defendants lacked a legitimate, non-pretextual reason for any adverse action

Even if Plaintiff had made a *prima facie* case of religious discrimination, his claim would fail at the final step of the *McDonnell-Douglas* analysis. Defendants articulated legitimate, non-discriminatory reasons for the adverse employment action. Defendants explain that the August 2019 command discipline was generated because the NYPD's Risk Management Bureau discovered video footage of Plaintiff's misconduct. *See* ECF No. 70 at 13. As for the tour changes, Defendants explain "Plaintiff moved from the midnight tour to the Anti-Crime Unit day tour in 2017 because Plaintiff was the only person with the requisite qualifications." *See id*. In March of 2019, Plaintiff was being reassigned out of the Anti-Crime Unit and specifically requested he be returned to the midnight tour. *See id*. Plaintiff then eventually returned to the day tour in August 20129 at his own request. *See id*. Defendants argue each of the tour reassignments was due to the needs of NYPD, Plaintiff's qualifications, and Plaintiff's requests. *See id*. Lastly, Defendants explain the denial of Plaintiff's leave request in November 2019 was due to the needs of NYPD because there was not enough personnel scheduled to work on November 1-2, the same period Plaintiff requested leave. Defendants have therefore met their burden at the second stage of the *McDonnell-Douglas* framework.

Plaintiff fails to put forth sufficient evidence such that a reasonable factfinder could find that Defendants' cited reasons were pretextual. Plaintiff points to multiple comparators who "received favorable treatment despite presenting similar or greater scheduling or disciplinary

concerns." *See* ECF No. 80 at 5. As discussed above,  Plaintiff fails to establish that the purported comparators are sufficiently similar to Plaintiff in all material aspects.

In sum, Plaintiff has not presented sufficient evidence from which a reasonable factfinder could conclude that Defendants lacked a legitimate, non-discriminatory reason for adverse employment actions discussed above. Defendants are therefore granted summary judgement on Plaintiff's Title VII religious discrimination claim.

## IV.    Whether There Are Triable Issues of Fact as to Plaintiff's Hostile Work Environment Claims

To make out a hostile work environment claim, a plaintiff must establish "that [his] workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of [his] work environment." *Shan v. New York City Dep't of Health & Mental Hygiene*, 316 Fed.Appx. 23, 24 (2d Cir. 2009) (internal quotations and citation omitted). To do so, "a plaintiff must show both that the misconduct was severe or pervasive enough to create an objectively hostile or abusive working environment and that [he] subjectively perceived the environment to be hostile or abusive." *Equal Opportunity Emp. Comm'n v. United Health Programs of Am., Inc.*, 213 F. Supp. 3d 377, 415 (E.D.N.Y. 2016) (quoting *Redd v. New York Div. Of Parole*, 678 F.3d 166, 175 (2d Cir. 2012). The religious hostility must be directed at the individual because of their religion. *See id.* (quoting 42. U.S.C. § 2000e-2(a)(1)). Courts should consider the totality of the circumstances in deciding whether a workplace is sufficiently hostile or abusive and should consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Under the SHRL and CHRL, a plaintiff must demonstrate he was

17

treated "less well than other employees because of a protected characteristic." *Williams v. N.Y.C. Hos. Auth.*, 61 A.D.3d 62, 78 (1ˢᵗ Dep't 2009).

. Plaintiff's hostile work environment claim is predicated on an alleged religious based comment made by Lt. Miranda, receiving unwarranted CDs, being transferred from the night shift to the day shift resulting in less pay, and being forced to work with Defendant Miranda and other lieutenants who were harassing him. "The Second Circuit has cautioned that the existence of a hostile work environment is a mixed question of law and fact. These kinds of questions are especially well-suited for jury determination and summary judgment may be granted only when reasonable minds could not differ on the issue." *Preuss v. Kolmar Labs., Inc.*, 970 F.Supp.2d 171, 185 (S.D.N.Y. 2013) (internal quotations and citations omitted). Much of Plaintiff's hostile work environment claim turns on statements made by either Lt. Miranda or other lieutenants Plaintiff alleges harassed him. Under these circumstances, it is the jury's role to evaluate whether certain statements occurred and if so, what weight to attribute to it in considering whether Plaintiff suffered severe or pervasive harassment. *See, e.g., Bowen-Hooks v. City of New York,* 13 F.Supp.3d 179 (E.D.N.Y. 2014) (holding that plaintiff did not experience sufficiently severe or pervasive harassment by, among other things, "being subject to a barrage of disciplinary actions and excessive scrutiny," having her "authority as a Lieutenant" undermined, and being assigned "undesirable and demeaning" work). This is an issue of credibility, better suited for the jury. *See Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (recognizing that at the summary judgement stage, courts should not assess credibility or decide between conflicting versions of events). These disputed issues go directly to whether such the workplace was sufficiently hostile or abusive and whether such hostility was based on Plaintiff's religion.  As such, summary judgment is denied on Plaintiff's hostile work environment claim.

**V.     Whether There Are Triable Issues of Material Fact as to Plaintiff's Retaliation Claims**

"Retaliation claims under Title VII are evaluated under a three-step burden-shifting analysis." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). "First, the plaintiff must establish a *prima facie* case of retaliation by showing: '(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action.'" *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (quoting *Jute*, 420 F.3d at 173). If plaintiff sustains this initial burden, a "'presumption of retaliation arises'" in which the defendant must then "'articulate a legitimate, non-retaliatory reason for the adverse employment action.'" (quoting *Jute*, 420 F.3d at 173). If defendant meets this burden, "'the presumption of retaliation dissipates and the employee must show that retaliation was a substantial reason for the adverse employment action.'" *Id.* (quoting *Jute*, 420 F.3d at 173). A plaintiff may meet this burden by proving that a retaliatory motive play only a part in the adverse action. *See id.*; *see also Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 70-71 (1st Dep't 2009) (NYCHRL requires only that retaliation was a motivating factor, not the but-for cause).

Defendants acknowledge Plaintiff engaged in a protected activity on June 3, 2020 with the filing of his EEOC complaint and on April 4, 2019 with the internal complaint made to NYPD's EEOD.[4] *See* ECF No 70 at 16-17. However, Defendants argue that many of the alleged adverse

---

[4] The Court acknowledges that Plaintiff argues he engaged in additional protected activity including "multiple oral and written complaints regarding discrimination and the failure to accommodate his Sabbath observance" as well as complaints submitted in internal NYPD systems. *See* ECF No. 80 at 8. The Court considers the previously noticed and documented complaints to EEOC and NYPD's EEOD. The Court declines to consider new facts pertaining to Plaintiff's complaints regarding a failure to accommodate his Sabbath observance or complaints in internal NYPD systems such as ICMS and IAPRO. As discussed above, Plaintiff may not raise new facts and claims for the first time in his summary judgement opposition brief. These facts were not alleged in Plaintiff's Amended Complaint.

employment actions occurred before either of these complaints were made and thus cannot support a claim of retaliation. *See id*. Defendants acknowledge Plaintiff still alleges adverse employment actions that occurred after April 4, 2019 such as his August 2019 command discipline, his August 2019 reassignment to the day tour, and his denial of leave in November of 2019. *See* ECF No. 83 ¶¶ 56, 62, 65-67. While Defendants argue the actions occurred more than four months after Plaintiff's EEOD complaint and thus are not close enough to support a casual connection, the Court is not convinced. "While the Second Circuit has not established a 'bright line rule' with respect to the limits of temporary proximity, three months falls within the time period sufficient to permit an inference of retaliation." *Dawson v. City of New York*, No. 09-CV-5348 (PGG), 2013 WL 4504620, at *18 (S.D.N.Y. Aug. 19, 2013). Given that the Plaintiff's burden in establishing a *prima facie* case is *de minimis*, the Court finds the temporal proximity between the protected activity and adverse employment actions sufficient to create a causal connection. As such, Plaintiff has met his burden in establish a *prima facie* case for retaliation.

The Court finds Defendants meet their burden in providing a legitimate, non-retaliatory reason for the adverse employment action. Defendants argue the August 2019 command discipline was due to Plaintiff's documented misconduct and that subsequent actions were a consequence of these events. *See* ECF No 70 at 17-18. The burden thus shifts back to Plaintiff to show retaliation was a motive for the adverse action. Plaintiff disputes Defendants' argument that the August 2019 command discipline was due to any documented misconduct, stating that Plaintiff testified the incident was minor and handled appropriately under the circumstances. Given the conflicting version of events, this is a matter of credibility better suited for the jury. Thus, the Court finds there remains a material dispute as to the legitimacy of the adverse employment actions and

20

whether retaliation was a motivating factor. Summary judgment is denied as to Plaintiff's retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to strike is hereby **DENIED**, and Defendants' motion for summary judgment is hereby **DENIED in part and GRANTED in part.** The Clerk of the Court is respectfully directed to terminate the pending motions at ECF Nos. 69 and 91.

**SO ORDERED.**
**Dated: March 31, 2026**
       **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

21